RCA GLOBAL COMMUNICATIONS, INC., Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION, and United States of America, Respondents,

and

ITT World Communications Inc., TRT Telecommunications Corporation and Western Union International, Inc., Intervenors.

No. 522, Docket 76–4054.

United States Court of Appeals, Second Circuit.

Argued Dec. 3, 1976.

Decided July 27, 1977.

On Rehearing Oct. 5, 1977.

Before MOORE, FEINBERG and GURFEIN, Circuit Judges.

MOORE, Circuit Judge:

Following this court's decision of July 27, 1977, FCC,[1] ITT and TRT have petitioned (August 10, 1977) for rehearing, ITT and FCC with a suggestion for rehearing *en banc*. The not unusual grounds are assigned, *i. e.*, that we have "misapprehend[ed] basic facts of the case" and that

1. The abbreviations used in the original opinion will be maintained here.

we have "failed completely to recognize the blatantly anti-competitive consequences of the original 1943 international formula". ITT in addition urges that we should limit the remand "to avoid unnecessary and confusing additional proceedings before the agency."

Possibly to spur this court into more rapid action or as an antidote to the rehearing petitions, RCA has made a motion (August 17, 1977) for the issuance of a mandate forthwith. Needless to say, this motion brought forth immediate and strenuous opposition from FCC, ITT and TRT (August 22, 23, 1977).

Since both petitions for rehearing and the motion for immediate mandate issuance present the same issues, namely, in substance, the court's ineptitude in understanding the determinative facts and applicable law, they will be treated together in writing, by way of extenuating circumstances, this apologia.

Initially, a few observations about "the public interest" which in a factually-unsupported and conclusory way was so stressed in the FCC opinions. We did not find that the formula [the "interim"] was in, or not in, the public interest. There simply was no proof that related it to the public interest in any way. It may well be that "public interest" is not a necessary factor to be considered in view of the fact that there seems to be no contention that the best-known technological methods of transmission are not being used and that no detriment is being suffered by the public from operations under the old or new formulas. The FCC's statements of possible improvement are wholly suppositious.

In the realm of misunderstandings, just as FCC, ITT and TRT believe that we have misunderstood the Commission's Orders, so we believe that our position, too, has been misunderstood. We do not regard the 1943 formula as "unlawful". Its entire purpose by Congressional edict was to balance the traffic situation as it then existed to avoid a possible WU monopoly. Certainly we can appreciate, just as the FCC, that the world has been spinning at an accelerated speed (undoubtedly a scientific inaccuracy)—in the field of telegraphic communications and for those participating in the industry since 1943. The FCC very properly was entitled to examine the situation in light of the present condition of the industry. Although the purpose of the 1943 formula was to freeze the shares of industry participation because of the potentially unique situation created by the merger, that purpose cannot be stretched to giving RCA a right in perpetuity to a fixed share of the telegraphic market regardless of changing conditions and circumstances. It certainly could not have been the intention of the Congress or the FCC to permit RCA to sit back and do nothing to counteract tactics by its competitors and rely upon the "formula" to give it the lion's share of the unrouted business.

In our Opinion we did emphasize what we felt were many non-sequiturs advanced by the FCC allegedly to support findings "in the public interest". We are concerned primarily with that interest. However, we had no, or do not have any intention "to invalidate the entire result of the FCC's efforts." The FCC Orders would appear to affect the carriers at the present time as to expenses possibly being incurred in preparation for an "all-routed" system. This situation is represented by RCA as resulting "in almost certain increases in costs to the carriers and, ultimately, to the users of the IRC's services, impairment of efficient service, . . .." These results we hope the FCC will strive to avoid. RCA also claims that the "interim" formula "has *exposed* RCA Globcom to a revenue loss of $1,500,-000". (emphasis added), and accurately defines "this proceeding [as] a dispute over a specific revenue-producing pool of international telegram traffic". But the 1943 formula did not create a contract in perpetuity apportioning revenues and did not relieve the FCC of its statutory duty to prescribe a "just, reasonable, equitable, and in the public interest" formula. Assuming "public interest" is eliminated as not adversely affected, mathematical subtraction still requires the FCC to cope with the

remaining first three requirements. The "interim" formula now has been in effect for some ten months. During this period some facts pertinent to the operation of the interim formula must have become available which would be of aid to the FCC on remand. We, therefore, view with favor the ITT suggestion of a limited remand to determine "whether the promulgation of the 'interim' formula has, in the opinion of the FCC, a factual basis in the record independent of the FCC's tentative preference for an all-routed system." Such a limited remand should not adversely affect either the FCC's further factual investigation of an "all-routed" plan or foreclose the parties from continuing their objections thereto. And possibly the FCC will find a method whereby, by proof, the interest of the telegram-sending public may be ascertained with respect to an all-routed requirement. However, if the FCC should choose to await the results of its anticipated further investigation into this field, there would appear to be no good reason for the threatened possibility of its inclusion in the "interim" plan, thus causing the industry presently to adjust itself to such a basis. Were "all-routed" plans to be eliminated or at least postponed for definitive findings, the division of "unrouted" messages would appear to be the primary issue. With ten months' experience behind them, the parties should be able to submit to the FCC such proof as would bear upon the equities or inequities of the "interim" plan.

Such remand is not to be limited to the record already made and, if the parties desire to submit to the FCC by affidavit and/or written argument additional facts and arguments as are relevant, they may do so, subject, however, to such scheduling as the FCC may direct. Because of the importance of the time element, it is suggested that proof, if any, be submitted to the FCC within thirty (30) days and that the FCC endeavor within sixty (60) days to make such findings of fact and draw such conclusions therefrom as may be warranted so as to enable the court to render its decision. Until then, the "interim" formula may be continued in effect and issuance of the mandate stayed. Motion for immediate issuance of mandate denied. Petitions for rehearing granted and on rehearing, case remanded to FCC for further proceedings and findings. This court, and this panel thereof, will retain jurisdiction of the case pending the proceedings outlined.